815 A.2d 964

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RONALD L. FRANKLIN, DEFENDANT–
APPELLANT.

Argued October 8, 2002—Decided February 26, 2003.

*J. Michael Blake,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Mark P. Stalford,* Assistant Prosecutor, argued the cause for respondent (*John A. Kaye,* Monmouth County Prosecutor, attorney).

*Bennett A. Barlyn,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Peter C. Harvey,* Acting Attorney General, attorney).

The opinion of the Court was delivered by

ALBIN, J.

This case requires us to resolve whether juveniles are entitled to the same rights as adults with respect to "gap-time" credit and, if so, whether gap-time applies to a period of imprisonment served after a parole revocation. The gap-time statute, *N.J.S.A.* 2C:44–5b(2), is found in the Code of Criminal Justice, but there is no equivalent provision in the Code of Juvenile Justice (Juvenile Code). A defendant who is sentenced to terms of imprisonment for two separate offenses imposed on different sentencing dates is entitled to gap-time credit for the period he serves from the date of the first sentence to the date of the second sentence where both offenses occurred before the first sentence. A defendant loses the potential benefit of a concurrent sentence every day the second sentence is deferred. The purpose of *N.J.S.A.* 2C:44–5b(2) is to ensure that a defendant's sentence is not lengthened because of delays in the prosecution of the offense underlying the second sentence.

We now hold that juveniles are entitled to the same equitable remedy as adults with respect to gap-time credit. We also conclude that gap-time credit applies to the period of imprisonment served on the first sentence after a parole revocation.

## I.

Ronald L. Franklin committed three crimes within five days of each other. On July 16, 1992, Franklin was arrested in Asbury Park for possession of heroin, an act of delinquency which, if committed by an adult, would constitute third-degree possession of a controlled dangerous substance in violation of *N.J.S.A.* 2C:35–10a(1) (heroin offense). On July 22, 1992, he was arrested for two separate robberies he had committed one day earlier in Asbury

Park, acts of delinquency which, if committed by an adult, would constitute second-degree robbery in violation of *N.J.S.A.* 2C:15–1 (robbery offenses). Franklin was seventeen years old at the time of all three offenses.

On August 14, 1992, Franklin entered a plea of guilty to the heroin offense at a delinquency proceeding in the Chancery Division, Family Part, and was sentenced to an indeterminate term of incarceration not to exceed two years. That term of incarceration was to be served at the New Jersey State Training School for Boys and Girls at Jamesburg.

On September 24, 1992, on motion by the prosecutor, the Family Part waived jurisdiction to the Law Division on the robbery offenses, permitting the prosecution of Franklin as though he were an adult. Eight months later, on May 20, 1993, Franklin was indicted by a grand jury for the robbery offenses.

On June 14, 1993, Franklin was placed on parole for the juvenile heroin offense. Unfortunately, he did not use his freedom wisely. On July 30, 1993, he was arrested for various offenses, including possession of a controlled dangerous substance, cocaine, with intent to distribute within 1000 feet of school property (distribution offense or distribution charge). His release on bail for the distribution offense was short-lived. On August 9, 1993, Franklin was again arrested and this time incarcerated for violating the conditions of his parole on the juvenile heroin offense, specifically, for failing to maintain employment and to refrain from possessing or using a controlled dangerous substance. At a hearing in November 1993, Franklin did not contest the parole violation. His parole was revoked, and a new parole eligibility date on the heroin offense was set for June 1, 1994.

On April 28, 1994, pursuant to a plea agreement with the State, Franklin pled guilty to the robbery charges and to the 1993 distribution charge. In exchange for the plea, the State recommended that Franklin receive seven-year concurrent prison terms on the robbery charges, to run concurrent to the time he was then serving on the heroin offense after revocation of his parole, and a

five-year prison term with a two-year period of parole disqualification on the distribution charge, to run consecutive to the robbery sentences and concurrent to the heroin offense. On May 26, 1994, Franklin was released from prison on the juvenile heroin offense. On June 10, 1994, he was sentenced on the robbery and distribution charges in accordance with his agreement with the State. That part of Franklin's sentence made to run concurrent to the heroin offense was rendered a nullity because he had already served the full time on the heroin offense.

Franklin filed a motion for post conviction relief seeking gap-time credit toward the robbery sentences for the time he served on the heroin offense before and after his parole revocation. The motion judge concluded that gap-time applied to a juvenile sentence, but only awarded Franklin 304 days of gap-time credit toward the robbery offenses, the period from the date of his sentence on the juvenile heroin offense until the date of his parole for that offense.

Franklin's appeal was heard on the Appellate Division's excessive sentencing oral argument calendar. The two-judge panel affirmed the motion judge, denying Franklin gap-time credit for the period after his parole revocation.

We granted Franklin's petition for certification, 171 *N.J.* 442, 794 *A.*2d 181 (2002), to determine whether gap-time credit applies to time served following a violation of parole. In addressing this issue, we must first decide whether gap-time credit applies to a juvenile term of imprisonment. We also granted the motion of the Attorney General to participate as *amicus*.

## II.

### A.

"Gap-time" is a subject more difficult to articulate than understand; it need not send shivers of fear down the spines of those who practice criminal law. The gap-time provision in our Code of

Criminal Justice deals with sentences of imprisonment imposed at different times. *N.J.S.A.* 2C:44–5b(2) provides, in relevant part:

When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:

. . . .

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served. . . .

[*N.J.S.A.* 2C:44–5b(2).]

■ This Court has previously noted that the statute's general purpose "is to avoid manipulation of trial dates to the disadvantage of defendants and to put defendants in the same position that they would have been 'had the two offenses been tried at the same time.'" *Booker v. New Jersey State Parole Bd.,* 136 *N.J.* 257, 260, 642 *A.*2d 984 (1994) (quoting *Model Penal Code* § 7.06 commentary at 278 (1962)). The intent of the statute is to "counteract any dilatory tactics of the prosecutor in pursuing a conviction for an earlier offense after a defendant has been sentenced on another offense." *State v. Carreker,* 172 *N.J.* 100, 105, 796 *A.*2d 847 (2002) (quoting *State v. Hall,* 206 *N.J.Super.* 547, 550, 503 *A.*2d 344 (App.Div.1985) (internal quotation marks omitted)).

■ The three-prong test for entitlement to gap-time credit requires a showing that (1) the defendant has been sentenced previously to a term of imprisonment, (2) the defendant is sentenced subsequently to another term, and (3) both offenses occurred prior to the imposition of the first sentence. *Carreker, supra,* 172 *N.J.* at 105, 796 *A.*2d 847 (citing *State v. French,* 313 *N.J.Super.* 457, 461, 712 *A.*2d 1281 (Law Div.1997)). "If those elements are established, then the defendant must be awarded credit for the time served on the prior sentence when the 'permissible aggregate length of the term or terms' is determined." *Carreker, supra,* 172 *N.J.* at 105, 796 *A.*2d 847 (quoting *N.J.S.A.* 2C:44–5b(2)).

The facts of this case present a straightforward application of the concept of gap-time. Franklin committed the heroin and

robbery offenses in July 1992. He was sentenced to a two-year indeterminate term of imprisonment on the heroin offense on August 14, 1992. Not until June 10, 1994, was Franklin sentenced to seven-year sentences on the robbery offenses. Had Franklin been sentenced on the robbery offenses on the same day as the heroin offense, the trial judge would have had the option of imposing concurrent sentences that would have reduced the aggregate sentence for those combined offenses. Every day the disposition on the robbery offenses was postponed, Franklin lost the benefit of a potential concurrent sentence and a reduction of his aggregate sentence. The plea agreement on Franklin's robbery offenses provided that the sentences for those offenses were to run concurrent to the term of imprisonment he was then serving on the juvenile heroin offense. Franklin lost any advantage of the concurrent sentencing provision because he had completed his term of imprisonment on the heroin offense by the time he was sentenced on the robbery charges.

We are aware that the gap-time statute may give a defendant a windfall benefit in those circumstances where there is no purposeful delay in the scheduling of sentencing and the sentences cannot be imposed on the same day for practical purposes. In this case, the prosecution moved to have Franklin tried as an adult on the robbery offenses, a procedure that necessarily ensured that a disposition of the robbery and heroin offenses could not be accommodated on the same date.

On the other hand, the gap-time statute was intended to alleviate the lost opportunity to a defendant by the type of gap between sentences as occurred here, a twenty-two month interruption between the two sentences. It must also be recognized that a defendant who is denied the chance to be sentenced to concurrent terms for separate offenses on the same day may never be made whole for that lost opportunity because gap-time credit comes off the back end and not the front end of a sentence.[1] Although in

---

[1] A simplified hypothetical demonstrates the point. If an adult defendant were sentenced on January 1, 2001, to a six-year term of imprisonment with no parole

some instances a defendant may receive an undeserved windfall by gap-time credit and in others less than full recompense for the lost opportunity of concurrent terms, the gap-time statute at least has the benefit of applying a uniform and easily manageable rule, avoiding the need for explanations for the reasons for delay or the motives of the parties. *See, e.g., Booker, supra,* 136 *N.J.* at 266, 642 *A.*2d 984 (stating that "across-the-board application of gap-time credits to both concurrent and consecutive sentences achieves the provision's purpose to deter delay (whether due to dilatory tactics or simple unavailability of court or counsel)"). It is not our task to modify the rule, but to apply it to the appropriate cases.

In this case, if Franklin had been sentenced to adult terms of imprisonment on both the heroin and robbery offenses, there is no question that he would be entitled to gap-time credit for at least the time served before parole on the heroin offense. We must now determine whether he should be denied gap-time credit because of his status as a juvenile.

### B.

The gap-time credit statute, *N.J.S.A.* 2C:44–5b(2), is a constituent part of the Code of Criminal Justice. The Juvenile Code is silent on the subject of gap-time credit for juveniles. The question is whether the absence of a gap-time provision in the Juvenile

---

disqualifier, he or she would be eligible for parole on December 31, 2002, after serving one-third of the sentence (ignoring jail, commutation, good behavior and any other applicable credits). *N.J.S.A.* 30:4–123.51(a); *N.J.A.C.* 10A:71–3.2(c)2. If on January 1, 2003, defendant were then given a second sentence of five years with no parole disqualifier for a crime committed prior to January 1, 2001, defendant would not get the full benefit of the gap-time statute. Even though defendant would be eligible for a two-year gap-time credit for the time served on the first sentence, that credit would come off the back end of the second sentence. The balance remaining on the second sentence would be three years, of which defendant would have to serve one-third, or one year. *N.J.A.C.* 10A:71–3.2(c)4. Defendant will end up serving at least three years on the two sentences. If the sentences had been imposed on the same day and made to run concurrently, defendant would have been eligible for parole in only two years. *N.J.A.C.* 10A:71–3.2(e).

Code is an indication that the Legislature intended to give adults, and not juveniles, the remedial benefit of gap-time and, if so, whether there is an underlying rationale for treating adults and juveniles differently in awarding gap-time credit. In addressing these issues, we must look to the nature of juvenile rights in general and the Juvenile Code in particular.

Our Legislature explicitly provided in the Juvenile Code that "[a]ll defenses available to an adult charged with a crime," and all rights guaranteed to adult criminal defendants under the Federal and State Constitutions (except indictment, trial by jury, and bail), are to be afforded to a juvenile. *N.J.S.A.* 2A:4A–40.[2] *See also, e.g., State v. Ferguson,* 255 *N.J.Super.* 530, 537–39, 605 *A.*2d 765 (App.Div.1992). This legislative declaration of equal rights to juveniles in the criminal justice system followed the watershed case of *In re Gault,* 387 *U.S.* 1, 31, 87 *S.Ct.* 1428, 1444, 18 *L.Ed.*2d 527, 548 (1967), in which the United States Supreme Court announced that juveniles were entitled to the same fundamental due process rights accorded to adult defendants in criminal proceedings. The Supreme Court in *Gault* also recognized that juveniles sentenced to confinement in a "reformatory" for their offenses face a harsh and bitter reality not vastly different from adults housed in penal institutions:

A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a "receiving home" or an "industrial school" for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His

---

2 The Juvenile Code states:

All defenses available to an adult charged with a crime, offense or violation shall be available to a juvenile charged with committing an act of delinquency.

All rights guaranteed to criminal defendants by the Constitution of the United States and the Constitution of this State, except the right to indictment, the right to trial by jury and the right to bail, shall be applicable to cases arising under this act.

[*N.J.S.A.* 2A:4A–40.]

world becomes "a building with whitewashed walls, regimented routine and institutional hours...." Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and "delinquents" confined with him for anything from waywardness to rape and homicide.

[387 *U.S.* at 27, 87 *S.Ct.* at 1443, 18 *L.Ed.*2d at 546 (footnote citations omitted).]

As our notions of juvenile justice have evolved, there has come the increasing recognition that while "rehabilitation remains a primary goal of the Juvenile Code[,] [n]evertheless, the Juvenile Code also reflects a correlative emphasis on public safety and deterrence." *State in the Interest of J.L.A.*, 136 *N.J.* 370, 377–78, 643 *A.*2d 538 (1994). In 1995, in amending the statement of purposes of the Juvenile Code, the Legislature underscored that, in addition to promoting rehabilitation, the sanctions available against juveniles are "designed to promote accountability and protect the public." *N.J.S.A.* 2A:4A–21b. Today, there is no doubt that "punishment has now joined rehabilitation as a component of the state's core mission with respect to juvenile offenders." *State v. Presha*, 163 *N.J.* 304, 314, 748 *A.*2d 1108 (2000). *See N.J.S.A.* 2C:1–2b (stating that general purposes of sentencing provisions of Code of Criminal Justice are, *inter alia*, "rehabilitation of offenders" and insuring "public safety"). Accordingly, the very justification for the imposition of a term of imprisonment for a juvenile is little different from that for an adult.

Although gap-time credit is not a constitutional right, juveniles are nevertheless entitled to "defenses available to an adult," which in a broad sense may be deemed to encompass sentencing alternatives available to adults, particularly those with public policy objectives that would be advanced in both adult and juvenile cases. Gap-time credit has the laudable goal of encouraging speedy disposition of multiple charges filed against a defendant to ensure fairness in sentencing. This is not a goal unique to the adult sentencing scheme.

Our courts have not hesitated to export provisions of the Rules of Court or the Code of Criminal Justice applicable to adults to expand the sentencing options of the Family Court in juvenile

cases. In *State in the Interest of W.M.*, 147 *N.J.Super.* 24, 25, 370 *A*.2d 519 (App.Div.1977), the Appellate Division confronted the question whether *Rule* 3:21–8, which requires the award of credit to an adult defendant for time served in custody before sentence on an offense, applied to juveniles. There was no analogous provision to *Rule* 3:21–8 in Part V of the Rules of Court, applicable to the then Juvenile and Domestic Relations Court. *State in the Interest of W.M., supra*, 147 *N.J.Super.* at 27, 370 *A*.2d 519. The *W.M.* court found no reason to deny juveniles the benefit of the salutary rule available to adults, holding:

> In light of the litany of cases, all of which expand the rights of juveniles to those afforded their adult counterpart, we perceive no reason why the juvenile should not receive credit for time spent in custody. It has not been suggested, nor can we conceive of a reason, why custody credit would be detrimental to the rehabilitative process of the juvenile. Absent a cogent reason to treat the juvenile differently, we deem it a matter of fundamental fairness that the juvenile receive credit for predisposition custody.
>
> [*Id.* at 26, 370 *A*.2d 519.]

In *State in the Interest of J.L.A., supra*, 136 *N.J.* at 371–72, 643 *A*.2d 538, this Court addressed whether the Family Court had the authority to impose consecutive sentences of imprisonment on juveniles who had committed two or more acts of delinquency. The Juvenile Code's silence on the subject contrasted with the express authority conferred by the Code of Criminal Justice allowing for the imposition of consecutive sentences. *Id.* at 372, 383, 643 *A*.2d 538. We held that absent a statutory expression to the contrary, the judiciary, including the Family Court, possessed the inherent power to impose consecutive sentences for separate offenses. *Id.* at 374, 382–83, 643 *A*.2d 538. We thus declined to attribute to the Legislature the intent to prohibit consecutive sentences in juvenile cases when appropriate. *Id.* at 380, 643 *A*.2d 538. In reaching that conclusion, we noted that the policies of the Juvenile Code were deterrence and punishment as well as rehabilitation. *Id.* at 376–79, 643 *A*.2d 538.

The Attorney General argues that the Juvenile Code provides for "incarceration" as a potential disposition for a juvenile, *N.J.S.A.* 2A:4A–43b, –44, whereas under the Code of Criminal

Justice gap-time applies only to a defendant who has been sentenced to "imprisonment." *N.J.S.A.* 2C:44–5b. From this difference in terminology, the Attorney General finds a clear legislative intent to prohibit gap-time credit to juveniles. We are not persuaded by that analysis of legislative intent. The legislative history of the Juvenile Code reveals that the terms "incarceration" and "imprisonment" were used interchangeably and without distinction. In discussing incarceration for delinquent acts, the Senate Judiciary Committee's comment states:

> Section 25 provides for terms of *incarceration* for delinquent acts. Specifically, this bill establishes aggravating and mitigating circumstances for the court to consider in determining whether or not to *incarcerate* a juvenile.
>
> . . . .
>
> This section also provides for presumption of *imprisonment* for certain serious crimes, such as criminal homicide, robbery, sexual assault and kidnapping, among others. Practically, this presumption may encourage less dependency on waiver of a juvenile to adult court, because of some assurance that the juvenile committing a serious crime would possibly receive a more appropriate disposition in the juvenile system.
>
> [Senate Judiciary Committee Statement to Assembly Bill No. 641; *L.* 1982, *c.* 77, § 25, reprinted after *N.J.S.A.* 2A:4A–20 (emphasis added).]

Our case law, moreover, makes clear that the term "imprisonment" does not have the concrete, immutable meaning suggested by the Attorney General. *See State v. O'Connor,* 105 *N.J.* 399, 408, 522 *A.*2d 423 (1987) (declining to hold that "the term 'imprisonment' should have the same meaning throughout the Code's sentencing provisions"); *French, supra,* 313 *N.J.Super.* at 467, 712 *A.*2d 1281 (holding that gap-time credit applies to municipal court sentence served in state prison because term imprisonment "appears to be as broad as the word 'incarceration' . . . [and] there does not appear to be a particular meaning in this [gap-time] statute to the word 'imprisonment'"). *See also Webster's New Third International Dictionary* (1981) (defining incarcerate as "to put in prison: imprison," from French word "carcer," meaning prison, and Latin word "incarceratus").

Permitting juveniles to receive the benefit of gap-time is consistent with the policies behind *N.J.S.A.* 2C:44–5b(2): "to mitigate the possible manipulation of sentences by prosecutors who might

delay a criminal indictment even when an inmate is available for disposition on a New Jersey offense," and thereby cause the defendant to lose the opportunity for a concurrent sentence. *Carreker, supra,* 172 *N.J.* at 113–14, 796 *A.2d* 847.

We do not envision that granting gap-time to juveniles will detract from any of the policies, including the goal of rehabilitation, supporting the Juvenile Code. The Attorney General's argument that juvenile sentences are shorter in length than adult sentences does not alter our analysis. We note that the periods of incarceration to which a juvenile may be sentenced range from six months to twenty years, with even longer terms available for repeat offenders. *N.J.S.A.* 2A:4A–44d(1), –44d(3). Moreover, we observe that the only real benefit of gap-time credit may be in those cases where a defendant receives a relatively short sentence involving substantial gap-time.

> Subtracting 106 days from the back end of a fifty-year sentence does not confer any considerable benefit on most offenders because those offenders with long parole bars will have "maxed out" long before the credit becomes relevant. On the other hand, in cases of relatively short sentences involving a fairly substantial period of gap time, . . . the credits serve a valid legislative purpose.
>
> [*Booker, supra,* 136 *N.J.* at 267, 642 *A.2d* 984.]

■ That a juvenile sentence may be shorter than an adult sentence should have no bearing on whether gap-time accrues while a juvenile is serving a term of incarceration because the harm caused by a delay in sentencing is the same. We therefore conclude that a juvenile term of incarceration qualifies as a term of imprisonment under *N.J.S.A.* 2C:44–5b(2).

### III.

■ We must next determine whether Franklin is entitled to gap-time credit for the period he served in custody following his arrest on the violation of parole. Franklin was arrested for that violation on August 9, 1993, did not contest the charges at his parole revocation hearing, and served the remainder of his sentence on the heroin offense until his release on May 26, 1994. Franklin was not sentenced on the robbery offenses until June 10,

1994, a full ten months after his arrest on the parole violation. The plea agreement between the State and Franklin for the robbery offenses provided that the sentence for those offenses was to run concurrent to the sentence Franklin was then serving on the heroin offense following his parole revocation. However, Franklin was denied that concurrent disposition because of the delay in the prosecution and sentencing on the robbery charges.

Parole is the conditional release of an inmate from confinement for conviction of an offense, subject to the terms set forth by the New Jersey State Parole Board. *State v. Black,* 153 *N.J.* 438, 447, 710 *A.*2d 428 (1998). *See also N.J.S.A.* 30:4–123.47. The determination after an administrative hearing by the Parole Board that a defendant has violated the conditions of his parole results in the revocation of parole and the return of the defendant to custody to serve the remaining portion of his original sentence. *Black, supra,* 153 *N.J.* at 448, 710 *A.*2d 428. *See also N.J.S.A.* 30:4–123.60 to –123.63.

A revocation of parole does not lead to the imposition of a new sentence, but to the continuation of the original sentence. In *Black, supra,* we determined that principles of double jeopardy and fundamental fairness were not violated in a case where a defendant who failed to report to his parole officer was subject to both parole revocation and criminal prosecution for absconding while on parole. · In that case, we addressed the "essential purpose and essential effect" of parole revocation:

> Revocation of parole or probation is regarded as reinstatement of the sentence for the underlying crime, not as punishment for the conduct leading to the revocation. Parole and probation are part of the original sentence.
>
> [153 *N.J.* at 450, 710 *A.*2d 428 (quoting *United States v. Brown,* 59 *F.*3d 102, 104–05 (9th Cir.1995)) (citations omitted).]

So, for example, when Franklin was taken into custody on the parole warrant, his "confinement [was] attributable to the original offense on which the parole was granted and not to any offense or offenses committed during [his] release." *Black, supra,* 153 *N.J.* at 461, 710 *A.*2d 428. In *State v. Hunt,* 272 *N.J.Super.* 182, 185, 639 *A.*2d 411 (App.Div.1993), *certif. denied,* 137 *N.J.* 307, 645 *A.*2d

136 (1994), the defendant was denied gap-time credit toward the offense that caused the revocation of his parole. The Appellate Division, however, asserted the well-accepted principle that imprisonment after a parole revocation "does not constitute a new sentencing event within the contemplation of *N.J.S.A.* 2C:44–5b(2)." 272 *N.J.Super.* at 185, 639 *A.*2d 411.

The underlying purpose of the gap-time credit statute—to give an incentive for the early disposition of a case where the defendant may have the opportunity for a concurrent sentence—certainly applies to the period after a revocation of parole. Of the twenty-two month delay between sentencing on the heroin and robbery charges, ten months of lost opportunity occurred after the parole revocation. Had Franklin been sentenced on the robbery charges on August 9, 1993, instead of June 10, 1994, he presumably would have received the full benefit of concurrent sentences based on the plea offer eventually extended to him.

We see no countervailing public policy rationale for denying gap-time credit for the period after parole revocation. In those circumstances, such as here, where a defendant commits a new crime while on parole, he faces new charges and the potential for an expanded prison sentence. Franklin received a consecutive five-year state prison term with a two-year parole disqualifier for the drug distribution charge that caused the revocation of his parole. He was not entitled to and did not receive any gap-time credit for this new offense. *See Hunt, supra,* 272 *N.J.Super.* at 185, 639 *A.*2d 411. Franklin thus received his "just deserts" for the distribution offense, not only by the reinstatement of his sentence on the heroin offense as a result of his parole revocation, but also by the punishment imposed for the distribution offense.

Last, we cannot agree with our dissenting colleagues' statutory analysis in support of denying gap-time credit for time served after a parole revocation. The dissent correctly notes that *N.J.S.A.* 2C:44–5b bars gap-time credit for an "offense committed while in custody," but then draws what it concedes is an "imperfect" analogy to a parole revocation case. The Legislature clearly

knew the distinction between "parole" and "in custody" and treated them differently in the same statute. *See N.J.S.A.* 2C:44–5b. Had the Legislature intended what the dissent suggests, the statute would have barred gap-time credit for "an offense committed while in custody," and for a "sentence served after a parole revocation." We do not discern any intent by the Legislature to accomplish that result. As noted earlier, Franklin will not receive gap-time credit for the distribution offense committed while on parole. *Hunt, supra,* 272 *N.J.Super.* at 185, 639 *A.*2d 411.

We therefore conclude that Franklin is entitled to gap-time credit for time served in custody on the heroin offense from the date of his arrest for violating parole until his sentencing on the robbery offenses. Accordingly, we reverse the judgment of the Appellate Division and remand to the trial court for the calculation and award of gap-time credit toward the sentences imposed on Franklin's robbery offenses consistent with this opinion.

VERNIERO, J., concurring in part, dissenting in part.

I concur in that part of the Court's holding that applies the gap-time calculation to time served on a juvenile sentence. I agree with the rationale expressed in the majority's opinion. I find additional support in this Court's recent decision in *State in re J.D.H.,* 171 *N.J.* 475, 795 *A.*2d 851 (2002). In that case, a juvenile argued that the police had intercepted a telephone conversation between himself and the victim of his sexual assault in violation of *N.J.S.A.* 2A:156A–4 (the Wiretap Act). At the time of the interception, the statute authorized the police to so act in cases in which "there exist[ed] a reasonable suspicion that evidence of *criminal conduct* [would] be derived from such interception[.]" *Ibid.* (emphasis added), *amended by L.* 1999, *c.* 151 § 3.

Somewhat ironically, the juvenile's argument in *J.D.H.* mirrored that which the State is asserting here, namely, that a criminal statute should not apply to juvenile conduct in view of the purported differences between acts of "delinquency" and adult "crimes." The juvenile contended "that the Wiretap Act's use of the phrase

'criminal conduct' was meant to exclude the police from intercepting communications of juvenile suspects." *J.D.H., supra,* 171 *N.J.* at 482, 795 *A.*2d 851. We disagreed, explaining: "We find nothing in the text or legislative history of the Wiretap Act that demonstrates convincingly that the Legislature intended the Act to apply only to investigations of adult suspects." *Ibid.*

I reason similarly in this case. I find no persuasive indication in the text or history of the gap-time statute that the Legislature intended it to apply only to adult sentences. I acknowledge that there are distinct differences between juvenile and adult proceedings. But because they yield the same result, *i.e.,* deprivation of a person's liberty, juvenile and adult sentences should be treated uniformly for purposes of the gap-time calculation. See *State v. Carreker,* 172 *N.J.* 100, 116, 796 *A.*2d 847 (2002) (favoring uniform application of gap-time statute unless such application "run[s] counter to the statute's language and underlying policy rationale").

I part company with my colleagues with respect to their conclusion that defendant is entitled to gap-time credit for that portion of his first sentence that he served after his subsequent criminal behavior resulted in a revocation of parole and re-incarceration. That conclusion is contrary to what I believe lawmakers would have intended in these circumstances. As the majority correctly notes, the gap-time statute at its root is grounded in equitable considerations. *Ante* at 459, 815 A.2d at 965-66 (characterizing gap-time credit as "equitable remedy"). In my view, however, those considerations require us to deny gap-time credit when a defendant violates parole and is re-incarcerated as a direct result of that conduct. Consistent with the majority's own equitable paradigm, I conclude that an award of gap-time credit to defendant in the face of his parole revocation constitutes an unwarranted benefit not contemplated by the Legislature.

Although the statute's legislative history is sketchy, we have surmised that the purpose of gap time "is to mitigate the possible manipulation of sentences by prosecutors who might delay a criminal indictment even when an inmate is available for disposi-

tion on a New Jersey offense." *Carreker, supra,* 172 *N.J.* at 113–14, 796 *A.*2d 847. With that purpose in mind, this Court recently held that the statute does not apply to time served on a defendant's out-of-state sentence. *Id.* at 111, 796 *A.*2d 847. We observed: "In the case of a defendant ... who has fled the jurisdiction and is serving time in a foreign facility, the risk of manipulation is greatly reduced, if not vitiated, by that defendant's absence." *Id.* at 114, 796 *A.*2d 847.

The same concept is applicable in this case. The time served for which defendant seeks credit resulted from a revocation of parole due to his subsequent acts, not from any manipulation by prosecutors. This is roughly similar to when an inmate commits a crime while in custody, the result being that the inmate's ultimate term of incarceration is extended to incorporate the additional offense. In that circumstance the statute expressly prohibits an award of gap-time credit. See *N.J.S.A.* 2C:44–5b (authorizing gap-time calculation when defendant is sentenced for certain offenses "other than an offense committed while in custody"). Although the analogy is imperfect, I find enough similarity between an offense committed while on parole and one committed while in custody to conclude that lawmakers did not intend that gap-time credit apply in either situation.

I do not suggest that courts undertake a fact-sensitive analysis each time they are presented with a gap-time application. In most instances a gap-time award is non-discretionary. We do not want sentencing courts to engage in lengthy hearings to determine whether idiosyncratic factors warrant a particular gap-time calculation. My intended disposition would not require such a hearing for two reasons. First, defendant's receipt of his juvenile sentence and his subsequent parole furnish the precise dates on which to calculate a gap-time award (*i.e.,* 304 days). Second, revocation of that parole was a defined act that indisputably enhanced the time served by defendant for which he now claims credit. That defendant's conduct resulted in his re-incarceration is self-evident, requiring no subjective determination by the trial court, similar to

when an inmate serves an out-of-state sentence for which no gap-time credit is available.

Lastly, "[c]riminal statutes, generally speaking, are to be strictly construed, but the rule of strict construction does not mean that the manifestations of the Legislature's intention should be disregarded." *Carreker, supra,* 172 *N.J.* at 115, 796 *A.2d* 847 (internal citation and quotation marks omitted). The statute does not address expressly the circumstances presented here. In my view, application of the statute in the face of defendant's parole revocation would run counter to its underlying policy rationale for the reasons already stated. I thus would afford the trial court the discretion to deny gap-time credit as was done below.

Justice COLEMAN joins in this opinion.

*For reversing and remanding*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI and ALBIN—5.

*Concurring in part/dissenting in part*—Justices COLEMAN and VERNIERO—2.