**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2160-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARIO D. LAWSON,

     Defendant-Appellant.

_____

Submitted May 27, 2025 – Decided June 11, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-02-0559.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Gregory R. Mueller, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Mario Lawson appeals from the January 26, 2024 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We glean the salient facts from the record. On May 16, 2013, defendant and two co-conspirators agreed to rob an unregulated gambling establishment located in Irvington, New Jersey by setting up a card game and stealing money from the participants. During the robbery, defendant wore a mask, carried a shotgun, and ordered everyone in the establishment to put their hands up while he proceeded to take money from the gambling tables. An individual was fatally shot by a co-conspirator while attempting to run away during the robbery.

On February 28, 2014, an Essex County Grand Jury indicted defendant, charging him with: (1) second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(b) (count one); (2) first-degree armed robbery, N.J.S.A. 2C:5-15(a) (counts two through six); (3) first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count seven); (4) third-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(c)(1) (count eleven); and (5) second-degree possession of a firearm with the purpose to use it unlawfully, N.J.S.A. 2C:39-4(a).

A-2160-23

On February 28, 2017, defendant pleaded guilty to: second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(b); first-degree armed robbery, N.J.S.A. 2C:15-1(a); first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1); and third-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(c)(1). During the plea colloquy, defendant confirmed his understanding of the terms of his guilty plea as memorialized in the plea forms. Defendant acknowledged that, when filling out the plea form, he directed his attorney to circle each answer on the form and defendant personally initialed the bottom of each page. Defendant further acknowledged he had enough time to confer with counsel and was satisfied with his representation. Based on defendant's testimony, the court accepted defendant's guilty plea and scheduled a sentencing hearing.

Although neither gap-time nor jail credits were discussed during the plea allocution, the following exchange took place at the sentencing hearing:

> THE COURT: Are there any additions, deletions or corrections that need to be noted?
>
> COUNSEL: Technically, Judge, there are no correction[s] or deletions or additions. However, I just want to go on the record which I mentioned before at some point is that, although, technically, the gap[-]time credit is correct for purposes of how the . . . chronology of events occurred here . . . my client did have an issue [with] the 750 being awarded as gap[-]time versus jail

3

credit based on some indications that were made to him in Union County at the time that he entered his guilty plea there. That's a matter for Union County. But I figured I would put it on the record here because we may . . . come back here on some future date depending on what happens there. So[,] I'd figure make a clear record on that.

THE COURT: All right. No, I appreciate that. Just [so] we're clear, the jail credit that [defendant] is completely entitled to would be the time that he spent in county jail from July 11, 2013, through March 13, 2014, which is 246 days plus the time that he spent in county jail from April 2, 2016, through April 23, yesterday, 2017 for a total of 387 days which adding those two together comes to 633 days.

Now, [defendant] is also entitled to gap[-]time credit for the time that he spent in state prison on the Union County case for—which is totally unrelated to this case. That was an aggravated assault on a law enforcement officer. He got three years in state prison. And . . . the time that he was in state prison from March 14, 2014, through April 1, 2016, 750 days, that would be gap[-]time credit.

Now, I . . . have no knowledge other than what you've just indicated about another judge, Judge Pine in Union County indicating that . . . 750 days should somehow be jail credit, that would be, in my estimation, inaccurate and wrong. So[,] I don't know, . . . maybe it was misunderstood. But that way, I mean, this case, this is what he's entitled to. I can't speak for whatever may or may not have been said over in Union County. I guess you're free to take that up over in Union County.

COUNSEL: I will deal with the attorneys there.

4

Consistent with the plea agreement, the court sentenced defendant to eighteen years of imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and awarded 633 days of jail time credit and 750 days of gap-time credit. The court found aggravating factors three, six, and nine based on defendant's high risk of re-offense, extensive prior criminal history, and the need for deterrence. See N.J.S.A. 2C:44-1(a)(3), (6), (9). The court did not find any mitigating factors.

Defendant filed a direct appeal arguing his sentence was excessive. We affirmed, concluding the sentence was not manifestly excessive, unduly punitive, or an abuse of discretion.

On May 9, 2022, defendant filed a pro se petition for PCR asserting his attorney was ineffective by failing to explain the difference between jail and gap-time credit prior to his guilty plea. Although defendant allegedly signed the PCR petition on March 25, the petition was not filed until May 9. According to defendant, he pled guilty expecting to receive 750 days of jail credit but only received 633 days. Defendant further asserted his sentence was excessive, his attorney failed to fully challenge the admission of his statement to law enforcement, and his attorney was ineffective for failing to present all mitigating information at sentencing.

A-2160-23

The PCR court issued a comprehensive written decision denying defendant's petition, finding the May 9 petition was not filed within five-years of his April 24, 2017 sentencing as required under Rule 3:22-12. The PCR court nonetheless considered defendants' substantive arguments as if they were timely. The PCR court found defendant had waived the argument that his sentence was excessive because it was not addressed in his merits brief and since this argument was previously rejected in our April 1, 2020 decision, where we concluded defendant's sentence was not manifestly excessive or unduly punitive.

The PCR court next found defendant's trial counsel was not ineffective for failing to fully challenge the admission of his statement to law enforcement because the trial court previously held that defendant "clearly understood his Miranda rights based on (1) the video of the statement [defendant] gave to law enforcement; and (2) the statements that were given to law enforcement." The PCR court found defendant "failed to show that both prongs of Strickland[1] have been met and failed to establish a prima facie claim for ineffective assistance of counsel."

As for defendant's claim that his attorney was ineffective for failing to explain gap-time and jail credit, the PCR court found defendant failed to assert

---

[1] Strickland v. Washington, 466 U.S. 668 (1984).

that he would not have accepted the plea offer if the gap-credits, rather than an award of jail credits, was part of the plea agreement. Because defendant was charged with first-degree felony murder, carrying a potential imprisonment of thirty years to life and the plea offer accepted was eighteen years' incarceration, the PCR court found defendant failed to establish a reasonable probability that "if [defendant] knew the credits from March 14, 2014, through April 1, 2016, was gap[-]time instead of jail credit that he would not have pled guilty." Thus, the PCR court found defendant failed to show that both prongs of Strickland had been met.

Finally, the PCR court considered whether defendant's trial counsel failed to present all mitigating information at sentencing. The PCR court found, at the time of sentencing, the court had all necessary information in its possession to consider defendant's arguments for each mitigating factor and found "[a]ll seven [m]itigating [f]actors d[id] not apply" to defendant's case.

Specifically, the PCR court found mitigating factor two, that defendant did not contemplate his conduct would cause or threaten serious harm, inapplicable because "defendant engaged in a conspiracy to commit robbery while being armed with a shotgun." N.J.S.A. 2C:44-1(b)(2). Nor did the PCR court find that mitigating factor three, that defendant acted under strong

7

provocation, applied because the decedent was running away from defendant when he was shot. N.J.S.A. 2C:44-1(b)(3). The PCR court also found mitigating factor four, that there were substantial grounds tending to excuse or justify the defendant's conduct, inapplicable because defendant had no "excuse or justification" for committing the armed robbery. N.J.S.A. 2C:44-1(b)(4).

As to mitigating factor ten, that defendant is particularly likely to respond to probationary treatment, the PCR court found this factor inapplicable because, as a juvenile, defendant had an extensive and serious record, including twenty-five arrests with two indictable convictions and eleven disorderly convictions. N.J.S.A. 2C:44-1(b)(10). The PCR court stated, "nothing deterred this [defendant] from committing additional crimes. Clearly, [defendant] is not likely to respond affirmatively to probationary treatment."

The PCR court further rejected mitigating factor eleven, that the imprisonment of defendant would entail excessive hardship to him or his dependents, because defendant's pre-sentence report stated "defendant was single with one son, age [four], and the son resides with his mother. There is nothing that sets this case apart from the heartland of other cases." N.J.S.A. 2C:44-1(b)(11). For mitigating factor twelve, defendant's willingness to cooperate with law enforcement, the PCR court found this factor inapplicable

because defendant only "pled guilty to benefit himself . . . [and] [t]he fact that a defendant pleads guilty and provides a truthful factual basis is in no way cooperation with law enforcement authorities." N.J.S.A. 2C:44-1(b)(12).

The PCR court further found mitigating factor thirteen, the conduct of a youthful defendant being substantially influenced by another more mature defendant, was inapplicable because there was no evidence or information to suggest defendant was influenced or coerced by anyone to commit the armed robbery. N.J.S.A. 2C:44-1(b)(13). Lastly, the PCR court found mitigating factor fourteen, permitting a sentencing judge to consider whether a defendant was under twenty-six years of age at the time of the offense, inapplicable because this statutory factor did not become effective until October 19, 2020, after defendant was sentenced. N.J.S.A. 2C:44-1(b)(14).

Based on the foregoing, the PCR court found defendant was not entitled to an evidentiary hearing because he did not establish a prima facie case of ineffective assistance of counsel. This appeal followed, with defendant raising the following points for our consideration:

> POINT I
>
> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEY FAILED TO ADVISE HIM THAT 750 DAYS OF CREDIT WOULD BE AWARDED

A-2160-23

ONLY AS GAP[-]TIME CREDIT AND THE PCR COURT ERRED IN DENYING RELIEF ON THIS ISSUE.

POINT II

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS COUNSEL WAS CONSTITUTIONALLY DEFICIENT FOR FAILING TO ADVOCATE FOR HIM AT SENTENCING AND THE PCR COURT ERRED IN DENYING RELIEF ON THIS ISSUE.

We address defendant's arguments in turn.

II.

We review the PCR court's determination to proceed without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (internal citations omitted). An evidentiary hearing is only required when a defendant establishes "a prima facie case in support of [PCR]," the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State

v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)).

"[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo," and "[w]e also review de novo the court's conclusions of law." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). The award of gap-time and jail credit are issues of law invoking de novo review. See State v. L.H., 206 N.J. 528, 543 (2011) (applying de novo standard in gap-time credit case); State v. Hernandez, 208 N.J. 24, 48-49 (2011), overruled in part on other grounds, State v. C.H., 228 N.J. 111, 123 (2017).

To establish an ineffective assistance of counsel claim,

> a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688, 694).
>
> [State v. Vanness, 474 N.J. Super. 607, 623-24 (App. Div. 2023) (citations reformatted).]

11

"It is well established that the <u>Strickland</u> standard applies with equal force to assertions of ineffective assistance of counsel associated with the entry of guilty pleas as to trial derelictions." <u>State v. Gaitan</u>, 209 N.J. 339, 350-51 (2012). However,

> [p]lea counsel's performance will not be deemed deficient if counsel has provided the defendant "correct information concerning all of the relevant material consequences that flow from such a plea." Stated another way, counsel must not "'provide misleading, material information that results in an uninformed plea.'"
>
> [<u>Vanness</u>, 474 N.J. Super. at 624 (internal citations omitted).]

To establish the prejudice prong to set aside a guilty plea based on ineffective assistance of counsel, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." <u>State v. DiFrisco</u>, 137 N.J. 434, 457 (1994) (alteration in original) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)). To that end, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have been "'rational under the circumstances.'" <u>State v. Maldon</u>, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not speculation." <u>Ibid.</u>

III.

As a threshold issue, we discern no error with the PCR court's finding that defendant's petition is time-barred pursuant to Rule 3:22-12.

> [N]o petition shall be filed . . . more than [five] years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless:
>
> > (A) it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice.
>
> [R. 3:22-12(a)(1)(A) (emphasis added).]

The five-year time bar on initial petitions may be relaxed only under the circumstances specified in Rule 3:22-12(a)(1)(A).  In assessing whether excusable neglect justifies relaxation of the time bar, we "consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009) (quoting State v. Afanador, 151 N.J. 41, 52 (1997)).  More than "a plausible explanation for [defendant's] failure to file a timely PCR petition" is required.  Ibid.  Our Supreme Court has described the required showing as one

13

of "compelling, extenuating circumstances," State v. Milne, 178 N.J. 486, 492 (2004) (quoting Afandor, 151 N.J. at 52), or alternatively, "exceptional circumstances . . . ." State v. Murray, 162 N.J. 240, 246 (2000) (citing State v. Mitchell, 126 N.J. 565, 580 (1992)).

"A fundamental injustice occurs 'when the judicial system has denied a defendant with fair proceedings leading to a just outcome or when inadvertent errors mistakenly impacted a determination of guilt or otherwise wrought a miscarriage of justice." State v. Hannah, 248 N.J. 148, 179 (2021) (internal quotation marks omitted) (quoting State v. Nash, 212 N.J. 518, 546 (2013)).

We conclude the PCR court properly found defendant's petition was untimely because it was filed outside the five-year time limit. Defendant was sentenced on April 24, 2017, and, therefore, he had until Monday, April 25, 2022, to file his PCR petition.[2] Thus, defendant's PCR petition, filed May 9, 2022, was untimely.

While defendant alleges he signed the petition before the expiration of the five-year limitation, Rule 3:22-12 specifically requires a PCR petition to be filed within five years from the date of sentencing. Although defendant may have

---

[2] Because April 24, 2022, was a Sunday, defendant had until the next business day to file his petition pursuant to Rule 1:3-1.

prepared the petition prior to the expiration of the deadline, he has not provided any evidence to show his delay in filing resulted from excusable neglect.

Because the trial court addressed the merits of defendant's petition, we also consider defendant's substantive arguments.

IV.

A.

A defendant is entitled to jail credits "for any time served in custody . . . between arrest and the imposition of sentence." R. 3:21-8(a). Jail credits "are applied to the 'front end' of a defendant's sentence, meaning that he or she is entitled to credit against the sentence for every day defendant was held in custody for that offense prior to sentencing." Hernandez, 208 N.J. at 37. "[O]nce the first sentence is imposed, a defendant awaiting imposition of another sentence accrues no more jail credit under Rule 3:21-8." Id. at 50.

Conversely, N.J.S.A. 2C:44-5(b) governs gap-time credit. Id. at 38. This statute "awards a defendant who is given two separate sentences on two different dates credit toward the second sentence for the time spent in custody since he or she began serving the first sentence." Ibid. A defendant is entitled to gap-time credit when "(1) the defendant has been sentenced previously to a term of imprisonment[;] (2) the defendant is sentenced subsequently to another term[;]

and (3) both offenses occurred prior to the imposition of the first sentence." Ibid. (alterations in original) (quoting State v. Franklin, 175 N.J. 456, 462 (2003)). "If the defendant meets those requirements, the sentencing court is obligated to award gap-time credits." Ibid. "Unlike jail credits, gap-time credits are applied to the 'back end' of a sentence." Ibid. (quoting Booker v. N.J. State Parole Bd., 136 N.J. 257, 260 (1994)). Gap-time credit will not reduce the period of parole ineligibility imposed by NERA. Hernandez, 208 N.J. at 41.

Defendant relies on State v. Nuñez-Valdéz, 200 N.J. 129 (2009), to support his assertion that trial counsel was ineffective for failing to advise him of the difference between gap-time and jail credits prior to his guilty plea. We are unconvinced Nuñez-Valdéz warrants reversal here. In Nuñez-Valdéz, the Court held an attorney provides ineffective assistance of counsel under the New Jersey Constitution where they affirmatively misadvise a defendant of the immigration consequences of a criminal conviction, forming a basis to vacate a guilty plea under the two-prong Strickland/Fritz standard. Id. at 138-39. The holding of Nuñez-Valdéz does not encompass any other type of misadvice by trial counsel. Defendant fails to cite to any prevailing law requiring resentencing because of an alleged misunderstanding about the application of gap-time or jail credits.

16

Neither jail credits nor gap-time credits were part of the plea terms placed on the record. In addition, in response to question twenty-one on defendant's plea form, defendant affirmed there were no additional promises or representations made to him as part of his guilty plea and, during the plea colloquy, defendant also confirmed as such with the trial judge.[3]

During the sentencing hearing, the trial judge addressed the jail credits and gap-time credits defendant would receive. Defendant was present at sentencing and voiced no misunderstanding about or objection to the jail or gap-time credits being awarded.

Even if trial counsel did not adequately explain the trial court's application of the credits, defendant has not shown there was a reasonable probability he would not have pled guilty had he known the 750 days were gap-time credits. Defendant did not certify that, but for trial counsel's alleged error, he would not have pled guilty. Defendant was facing multiple charges carrying a potential sentence well beyond the eighteen years he received under the plea agreement. Thus, even if his attorney was deficient, defendant cannot show it would have

---

[3] Question twenty-one of the plea agreement form states, "[l]ist any other promises or representations that have been made by you, the prosecutor, your defense attorney, or anyone else as part of this plea of guilty" and defendant's written response was "none."

been rational under the circumstances to reject the plea offer when he was facing the possibility of thirty years to life imprisonment for felony murder. See State v. Rountree, 388 N.J. Super. 190, 215 (App. Div. 2006) (rejecting the defendant's ineffective assistance of counsel claim based only on defendant's "bald assertions" that his "misunderstanding" of gap-time credit caused him to turn down a plea deal).

### B.

We are also unconvinced that defendant's trial counsel was ineffective for failing to argue certain mitigating factors were applicable at sentencing. Defendant claims the plea allowed for a sentencing range between ten to eighteen years and mitigating factors four, eight, eleven, twelve, thirteen, and fourteen justified a sentence near the low end of the range but were not presented by his trial counsel.[4]

"Adequate assistance of an attorney is measured according to whether the counsel has professional skills comparable to other practitioners in the field." State v. Davis, 116 N.J. 341, 351 (1989). "The test is not whether defense counsel could have done better, but whether he [or she] met the constitutional threshold for effectiveness." Nash, 212 N.J. at 543.

---

[4] N.J.S.A. 2C:44-1(b).

Here, we conclude trial counsel's performance with respect to his representation of defendant—which included obtaining a favorable plea agreement—was well within the minimum standard of effective assistance of counsel. The record is devoid of any basis to support a finding that trial counsel's performance was deficient or counsel was not functioning in a manner guaranteed by the Sixth Amendment. See Gaitan, 209 N.J. at 349-50.

Further, defendant has failed to demonstrate how any alleged deficiency resulted in prejudice and that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 694). We are satisfied defendant has not demonstrated how the sentence imposed would have been different had trial counsel made the specific arguments defendant claims were overlooked. The negotiated plea agreement was, by any objective analysis, favorable to defendant.

As defendant failed to establish a prima facie case of ineffective assistance of counsel, no evidentiary hearing was required. To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

19                                                           A-2160-23